**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

CEDRIC WATKINS                                                                          PLAINTIFF

V.                                  5:09CV00280 DPM/JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                          DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been sent to United States District Judge D.P. Marshall Jr. Within fourteen (14) days after being served with a copy of the recommended disposition, any party may serve and file with the Clerk of this Court specific written objections to the proposed findings and recommendations. A copy of the objections must be served on the opposing party, who may respond within fourteen (14) days after being served. The District Judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions.

**RECOMMENDED DISPOSITION**

**I. Background**

Plaintiff, Cedric Watkins, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB")and Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs (docket entries #16 and #18), and the issues are now joined and ready for disposition.[1]

The Court's function on review is to determine whether the Commissioner's decision is

---

[1] Plaintiff filed a Motion for Summary Judgment and a Brief in Support. (Docket entries #16 and #17). In the Eastern District of Arkansas, social security disability cases are submitted on Appeal Briefs. The Court will consider Plaintiff's summary judgment papers as an Appeal Brief.

supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff claims that he is disabled based on neck, back and heart problems. (Tr. 62). On January 26, 2007, the Administrative Law Judge ("ALJ") conducted an administrative hearing. Plaintiff, his wife, and a vocational expert ("VE") testified. (Tr. 198-236). On July 21, 2007, the ALJ issued his decision holding that Plaintiff had not been under a disability at any time through the date of his decision. (Tr. 22-23).

On July 1, 2009, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 4-6). On September 3, 2009, Plaintiff filed his Complaint initiating this appeal. (Docket entry #2).

Plaintiff was 39 years old at the time of the administrative hearing. (Tr. 204). He was a high school graduate, with some special education classes. (Tr. 60, 204). He had past relevant work as a lumber yard worker and janitor. (Tr. 21, 63, 209, 230).

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(i)(2006). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.*

---

[2]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

§§ 404.1520(b), 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment.[3] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his alleged onset date (Tr. 14); (2) had "severe" impairments consisting of a history of syncopal episode, a history of hypertension and cardiac arrhythmia (status post pacemaker/defibrillator implantation), a history of ventricular tachycardia/arrhythmia (stable) with palpitations, non-ischemic cardiomyopathy, and a history of cervical disc disease with a disc protrusion at C6-C7 with right C7 radiculopathy and mild spinal canal stenosis (*id.*); (3) did not have an impairment or combination of impairments that met a Listing (Tr. 15); (4) retained the residual functional capacity for a wide range of unskilled or semi-skilled sedentary work (Tr. 15-16); (5) was unable to perform any of his past relevant work (Tr. 21); but (6) was able to perform other jobs that existed in significant numbers in the economy, including positions as an order clerk or table worker.

---

[3]If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

(Tr. 22).  Thus, the ALJ concluded that Plaintiff was not disabled.  *Id.*

## II.  Discussion

In his Appeal Brief, Plaintiff argues that the ALJ erred: (1) in failing to give full and fair consideration to all of the evidence of his impairments; (2) in improperly discounting his subjective complaints; (3) in failing to fully develop the record; and (4) in determining his residual functional capacity.  The Court will analyze each of these alleged errors separately.

**1.  The ALJ Did Not Give Full and Fair Consideration to the Evidence of Impairment**

According to Plaintiff, the ALJ should have given more weight to the opinion of Plaintiff's treating family physician, Dr. Larry B. Brashears.  Plaintiff characterizes Dr. Brashears as his "long term treating physician." (Pltf's App. Brf. at 14).  Plaintiff saw Dr. Brashears on six occasions from June 2005 through January of 2007.  (Tr. 114, 181-82).  On January 24, 2007, Dr. Brashears wrote a To Whom It May Concern letter on Plaintiff's behalf.  In pertinent part, the letter stated:

> My patient, Cedric Watkins, is a 39-year-old black male with multiple medical problems that have caused this patient to be totally disabled to work.
>
> Problem 1:
> > The patient has a herniated cervical disc at C6 and C7 that is very symptomatic.  Dr. Martin Greenberg, his neurosurgeon, is currently treating him conservatively because he is such a high cardiac risk for surgery.  His outcome of this conservative treatment is unknown, but he continues to have problems.
>
> Problem 2:
> > The patient has chronic lumbar pain that for quite sometime, has been exacerbated every time he tries to work or do some sort of physical exertion[.]  He is currently on no particular medication for this currently, but he has not been very active.
>
> Problem 3:
> > The patient is at risk for sudden cardiac death due to non ischemic cardiomyopathy.  He has had a pacer defibrillator inserted to protect him against the possibility of cardiac arrest.  His cardiologist has asked to be notified if the patient passes out or receives any shocks from his defibrillator.
>
> Problem 4:
> > The patient has an obscure bone marrow problem that has caused him to have low platelets in the past.  The current status of this is unknown to me.

>Problem 5:
>>The patient is deaf in his right ear.
>
>In my opinion, this patient is totally disabled to do any work that would require the use of his back, neck or put him in such stress that would endanger his cardiac status.

(Tr. 179-80).

In his decision, the ALJ made it clear that he gave "very careful consideration" to the opinion of Dr. Brashears. (Tr. 19-20). However, he gave greater weight to the opinion of Plaintiff's treating cardiologist, Dr. Van H. De Bruyn. (Tr. 20). It appears that Plaintiff saw Dr. De Bruyn on at least six occasions. (Tr. 91-92, 94, 98-101, 102-04, 175-76, 189-91). On June 26, 2003, when Dr. De Bruyn saw Plaintiff for a follow-up, after implantation of a pacemaker/defibrillator, Plaintiff reported doing "fairly well." (Tr. 98) Plaintiff denied syncope, near syncope or shocks from his implantable cardiac defibrillator. *Id.* He also reported that he had gone back to work at the wood yard. *Id.*

On February 26, 2004, Plaintiff once again saw Dr. De Bruyn. Plaintiff denied having any problems, syncope or near syncope, chest pain, or shortness of breath. (Tr. 91) He was "fairly active in general." *Id.* Plaintiff wanted Dr. De Bruyn to write a letter stating that he was completely disabled. *Id.* He told Dr. De Bruyn that he did not want to work at McDonald's, where his girlfriend worked, because there was no future in that. *Id.* Dr. De Bruyn noted that:

>I told him I would write him a letter outlining the few things that he is not able to do, however, [I told him] that I cannot honestly state that he is completely disabled, as there are many jobs that he could still do and I outlined these in some detail.

(Tr. 92).

On February 1, 2005, Plaintiff saw Dr. De Bruyn and complained of some palpatations, "but nothing that makes him stop activity or feel near-syncopal." (Tr. 175) Plaintiff continued to seek employment, but had no success due to his cardiac history and the lack of employment opportunities in his hometown.[4] *Id.*

---

[4] An intention to work tends to prove that a claimant is able to work. *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

5

Case 5:09-cv-00280-DPM   Document 20   Filed 07/14/10   Page 6 of 10

Importantly, Dr. De Bruyn's opinion was supported by his treatment notes, while Dr. Brashears' opinion was not. Generally, the opinion of a specialist about medical issues related to his area of specialty is entitled to more weight than the opinion of a medical source who is not a specialist. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5) (2006); *see Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

Based on a careful review of the entire record, the Court concludes that substantial evidence supports the ALJ's decision to give greater weight to the opinion of Dr. De Bruyn. The Court also concludes that the ALJ gave full and fair consideration to all of the evidence related to Plaintiff's impairments.

## 2. The ALJ Improperly Discounted Plaintiff's Credibility

Next, Plaintiff argues that the ALJ improperly discounted his subjective complaints. (Pltf's App. Brf. at 13-15). In his decision (Tr. 16-18), the ALJ considered Plaintiff's subjective complaints in light of the factors outlined by the Court in *Polaski v. Heckler*,[5] 739 F.2d 1320 (8th Cir. 1984):

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. the claimant's daily activities;
>   2. the duration, frequency and intensity of the pain;
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original). The ALJ's credibility findings are

---

[5] The ALJ also cited Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929. (Tr. 16) That Ruling tracks *Polaski* and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

6

entitled to deference as long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

In a Disability Supplemental Interview Outline, dated August 11, 2004 (Tr. 61), Plaintiff indicated that he: groomed without assistance; did laundry, ironed, took out the trash and sometimes mowed the lawn; shopped for groceries and completed postal errands (Tr. 57); prepared meals, including sandwiches, frozen dinners, meats and vegetables; paid bills and counted change; drove and walked for exercise; attended church, watched television, listened to the radio and read. (Tr. 58). This level of daily activities is inconsistent with the amount of pain and limitations described by Plaintiff during the administrative hearing. *See, e.g. Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)("acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain"); *Clevenger v. Social Security Administration*, 567 F.3d 971, 976 (8th Cir. 2009)(not unreasonable for the ALJ to rely on array of activities, including laundry, dishes, changing sheets, ironing, preparing meals, driving, attending church and visiting friends and family, to infer assertion of disabling pain was not credible).

At the administrative hearing, Plaintiff testified that his driver's license was suspended for failure to pay child support. (Tr. 203). He also testified that a doctor had restricted him from driving because of blackouts. (Tr. 216). He stated that he had a blackout at work and was hospitalized "about almost a week." (Tr. 214). The record, however, indicated that he was hospitalized overnight for heat exhaustion. (Tr. 215). Plaintiff testified that he could walk a half a block, maybe up to a block. (Tr. 212). However, he was performing medium work. (Tr. 212-13). As noted in his Disability Supplemental Interview Outline, he indicated that he walked for exercise. (Tr. 58). There was testimony that Plaintiff needed two more cardiac surgeries. (Tr. 213-14, 223-25). The ALJ suggested that counsel have Plaintiff's cardiologist write a letter detailing those surgeries. (Tr. 224-25). Dr. Bruyn wrote a letter addressed to counsel explaining that: (1) Plaintiff has not been registering complaints; (2) an outpatient procedure could be performed if medical

therapy was not successful; but (3) he could not honestly say that all medical options had been exhausted. (Tr. 188).

In August of 2005, Plaintiff underwent a consultative physical examination. (Tr. 115-121). He had a full range of motion in the spine and all extremities. (Tr. 118). He was neurologically intact, without evidence of muscle weakness, atrophy, or sensory abnormalities. (Tr. 119). His gait and coordination were normal. *Id.* He had the ability to hold a pen and write, touch fingertips to palms, oppose thumb to fingers, pick up a coin, stand and walk without an assistive device, walk on his heels and toes, squat and arise from a squatting position, and had a normal grip. *Id.* His circulation was normal. (Tr. 120). There was no evidence of serious mood disorder or psychosis and he was oriented to time, person and place. *Id.* The examining doctor did not indicate any limitation on his ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. (Tr. 121).

There is little objective support in the record for Plaintiff's claim of disability. His medical evaluations did not show medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *Richmond v. Shalala*, 23 F.3d 1141, 1443 (8th Cir. 1994). Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations, the type of medications taken, the lack of more treatment, Plaintiff's daily activities, his poor work record, his functional capabilities and the lack of restriction placed on Plaintiff by his physicians, the ALJ had valid reasons for discounting Plaintiff's subjective complaints pursuant to *Polaski*.

### 3. The ALJ Failed to Adequately Develop the Record

Plaintiff argues that the ALJ did not fully develop the record primarily with respect to Plaintiff's alleged mental limitations. (Pltf's App. Brf. At 15-16). In his decision, the ALJ noted the following:

> While the record evidence shows the claimant diagnostic history of depressive/anxiety/post traumatic symptoms with a "rule out" diagnosis of borderline intelligence (Ex. B-8F), subsequent to an examination completed on September 1, 2005 in connection with his application for disability benefits (Ex. B-8F), there is no

> evidence from which to conclude the claimant has regularly discussed symptoms of depression/anxiety/post traumatic symptoms with any treating and/or examining physicians, or that he has ever sought or received treatment for any associated symptoms. Further, the claimant did not allege any degree of disabling symptoms associated with depression/anxiety/post traumatic symptoms upon his initial application for benefits, nor did he testify to or allege any symptoms of depression and/or anxiety during the hearing in this matter.
>
> Accordingly, it is concluded by the undersigned Administrative Law Judge that the claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

(Tr. 15).

Importantly, Plaintiff did not allege a disabling mental impairment in his application for benefits. *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993). He also did not offer it as a basis for disability at the administrative hearing. *See Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989) (claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety). Finally, Plaintiff never sought mental health treatment, nor was he ever referred for such treatment. *See Smith v. Shalala*, 987 F.2d at 1375, *citing Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) *and Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987). The ALJ is not obligated to investigate a claim that was not presented at the time of application or offered at the hearing as a basis for disability. *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008); *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996). Accordingly, the Court concludes that the ALJ adequately developed the record.

**4. The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity**

Plaintiff's makes three closely related arguments dealing with the ALJ's allegedly erroneous determination of Plaintiff's residual functional capacity. (Pltf's App. Brf. at 16-18). The ALJ must determine a claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d

549, 556 (8th Cir. 2003); *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ must also evaluate the claimant's credibility in assessing residual functional capacity. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2008).

Plaintiff's activities of daily living, his physical examination and his treating cardiologist's opinions all support the ALJ's residual functional capacity determination. Plaintiff's arguments seek to place the burden of proof on the Commissioner. It is the claimant's burden to prove his residual functional capacity. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Based on the Court's review of the record, substantial evidence supports the ALJ's RFC assessment.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and Plaintiff's Complaint be dismissed, with prejudice.

DATED this 14th day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE